Matter of the Estate of CAROLINE A. BRUNDAGE, Deceased.

(Surrogate's Court, New York County, November, 1917.)

Wills — provisions of — devise of **real property** — insufficiency of assets to pay debts — executors and administrators — mortgages — trusts — remainders — bequests — legacy — abatement.

A devisee of real property subject to mortgage must satisfy it out of his own property without resorting to the executor of his testatrix unless by the will payment of the mortgage is otherwise directed.

A testatrix whose assets at the time of her death were insufficient to pay the legacies and to set up the trusts created by her will died seized of fourteen pieces of real estate, ten of which, at that time, were subject to mortgage and included two pieces specifically devised, the income from one of which, since that time, had not been sufficient to pay the necessary carrying charges. The executors and trustees were authorized and directed to keep the estate in good order and repair, pay all taxes, assessments or liens which might be assessed or levied thereon, keep the same insured, pay off all mortgages and incumbrances on real estate which might exist thereon at the decease of testatrix, and they were also empowered to sell, mortgage or lease any or all property not specifically devised, as they might from time to time deem best for the purpose of carrying out the provisions of the will. *Held,* that it was the intention of testatrix that all mortgages, being liens upon her property at the time of her death, should be paid from her general estate.

A certain clause of the will provided that upon the death of the various life beneficiaries of income the principal should be returned to and become a part of the residuary estate, or, in certain instances, should go to the issue of the par-

ticular beneficiary, if any, or in default of such issue the same should become a part of the residuary estate. By another clause of the will all the rest, residue and remainder of the estate, both real and personal, not otherwise specifically disposed of, was devised and bequeathed to a nephew of testatrix for life and on his death the trust for his benefit should cease and the property divided among his surviving children and the issue of any deceased child *per stirpes*. *Held,* that the remainder of the various trust funds must first be applied in payment of general legacies.

A bequest to an incorporated cemetery association, in trust to apply the income therefrom to caring for and keeping in good order the burial plot of testatrix in said cemetery, is to be deemed a part of her funeral expenses, does not abate and should be paid in full.

By the third clause of her will testatrix bequeathed to her executors and trustees the sum of $5,000 to be used by them for the erection of a vault upon her burial plot, but on account of the size of said plot the rules of the cemetery prohibited the erection of a mausoleum, and it appeared by the affidavit of one of the executors that a very ample allowance for the performance and completion of the work necessary to the fullest compliance possible with the directions of the will would not exceed the sum of $1,500. *Held,* that as the trust so created had partially failed it was valid as a charitable use, and under the doctrine of *cy-pres* the executors may set up a trust in the sum of $1,500 and carry out as near as possible the trust as set forth in said clause of the will, without prejudice to the other legatees; that the balance of the sum set apart by said clause becomes a part of the general assets of the estate and should be first applied to the payment of the general legacies.

Testatrix bequeathed to the "Home for Old Men and Aged Couples," etc., the sum of $5,000 on the death of her husband's niece "as hereinafter mentioned" to whom by the next clause of the will was bequeathed the sum of $20,000 for life and on her death the sum of $5,000 "as hereinbefore mentioned" was given to said "Home." By abatement the fund for the benefit to the said niece was reduced to the sum of $8,920.32. *Held,* that the bequest to the "Home" was a demonstrative legacy payable out of the principal of the trust fund, and that a proposed method of distribution thereof by which the "Home" was to receive one-quarter thereof plus its proportionate share

34

Surrogate's Court, New York County, November, 1917.   [Vol. 101.

of the remaining three-quarters of said fund, which under the proposed decree is to be distributed ratably among the other legatees entitled thereto, was erroneous.

PROCEEDINGS upon the judicial settlement of the accounts of executors and trustees.

Geller, Rolston & Horan, for temporary administrator and executors and trustees.

Moen & Dwight, for Woodlawn Cemetery.

David B. Simpson, for Gertrude L. Forman and others.

Silas A. H. Dayton, attorney in person.

Bissell & Elsasser, for Helen A. French.

Louis W. Dinkelspiel, for Mary Ewer Maynard and others.

Richmond Weed, for Home for Old Men and Aged Couples.

Edward J. Flanagan, for Annie S. Kress, as general guardian, etc.

Michael J. Egan, special guardian.

Miller, King, Lane & Trafford, for St. Luke's Hospital.

Brush & Crawford (John J. Crawford, of counsel), for William H. Young.

FOWLER, S.   The executors and trustees having filed their accounts, a judicial construction of the will of

testatrix becomes necessary. Such construction has been postponed, by consent, until the settlement of the decree now proposed. The scheme of the will of Caroline A. Brundage is substantially as follows: By the first clause of her will the testatrix revokes and annuls all former wills. By the second clause she directs the payment of her debts, funeral and testamentary expenses. By the third clause she provides for the erection of a vault in Woodlawn Cemetery. By the fourth clause she gave $1,000 to Woodlawn Cemetery for the care of her burial plot. By the fifth clause she gave specific bequests of personal effects to various friends and relatives. By the sixth clause she gave cash legacies amounting to $59,000. By the seventh clause she created thirteen separate trust funds, aggregating $180,000, for thirteen individuals for life, of which the remainders in funds aggregating $55,000 are directed to go to her residuary estate, and the remainders in the other funds to the issue of the beneficiary, and on the failure of such issue to the residuary estate. By the eighth clause testatrix specifically devised four pieces of her real property. By the ninth clause she gave the income of the rest, residue and remainder of her property, both real and personal, to William Henry Young for life and the remainder to his issue. By the tenth clause she nominated her executors and trustees. Testatrix died seized of fourteen pieces of real estate. Ten of these pieces were subject to mortgage at the time of her death, including the two pieces specifically devised to William Henry Young and Victorine Skidmore by the eighth clause of her will. The assets of the estate of Caroline A. Brundage are insufficient to pay legacies and to set up the trusts in full, and they will have to abate by more than fifty per cent.

The first question arising from the construction of the will of Caroline A. Brundage has to do with the

provisions providing for the paying off of the mortgages upon her real property, and more particularly the mortgages on the property specifically devised by the eighth clause of her will. The eighth clause of such will provides as follows: " *Eighth.* I make the following specific devises of real property, to wit: (a) To my cousin, Victorine Skidmore, the house known as No. 53 Park place, borough of Brooklyn, city of New York, during her life, with remainder to her grandson, Minthorne T. Brundage Kress, and if he does not survive her, then to her other surviving descendants *per stirpes.* (b) To my nephew, William Henry Young, the net rents of premises No. 125 East Thirty-fourth street, borough of Manhattan, city of New York, during his life, and on his death to his surviving children and issue of deceased children, if any, *per stirpes,* and if he leave no descendants, then I devise said premises No. 125 East Thirty-fourth street to my grandnephews, George Lyle Forman and Charles E. B. Forman, in equal shares during their respective lives, with remainder to their children, in equal shares, *per stirpes.* If either of the said Formans shall have died leaving a child or children him surviving, the same shall take the deceased parent's share *   *   *."

At the time of the death of said testatrix the premises known as No. 53 Park place, in the borough of Brooklyn, city of New York, were subject to a mortgage made to secure the payment of the principal sum of $4,000, with interest thereon at five per cent per annum, and the premises known as No. 125 East Thirty-fourth street, borough of Manhattan, city of New York, were subject to a mortgage made to secure the payment of the principal sum of $35,000, with interest thereon at the rate of five per cent per annum.

By the tenth clause of her will testatrix provided as

Misc.]    Surrogate's Court, New York County, November, 1917.

follows: *" Tenth.* I hereby appoint the Farmers' Loan and Trust Company of the city of New York to be the executor of and trustee under this will, together with my husband, should I marry and be survived by a husband; or, if not, together with Rev. Nathan A. Seagle, of No. 120 West Sixty-ninth street, borough of Manhattan, city of New York, and I authorize and direct my said executors and trustees to keep all my estate in good order and repair, to pay all taxes, assessments or liens which may be assessed or levied thereon, to keep the same insured, to pay off all mortgages and incumbrances on real estate which may exist thereon at the time of my decease, and I also empower them to sell, mortgage or lease any or all of my property not herein specifically bequeathed, as they may from time to time deem best for the purpose of carrying out the provisions of this will. "

The income from the premises known as No. 125 East Thirty-fourth street has not been sufficient to pay the necessary carrying charges. The accountants have paid such carrying charges out of the income from the general estate upon the theory that said mortgages were payable out of the general estate, and objection to such payments raises the question as to the true construction of the will of testatrix in respect to these matters.

It is well settled that where real property subject to a mortgage is devised the devisee must satisfy the mortgage out of his own property without resorting to the executor of such testator, unless there be an express direction in the will of such testator that such mortgage be otherwise paid. Real Prop. Law, § 250; *Searles* v. *Brace,* 19 Abb. N. C. 10; *Waldron* v. *Waldron,* 4 Bradf. 114; *Matter of Hopkins,* 57 Hun, 9; *DeGraaf* v. *Cochrane,* 21 App. Div. 381; *Sutherland*

v. *Gesner,* 27 Hun, 282; *Clark* v. *Goodridge,* 51 Misc. Rep. 140, 155.

It is urged on behalf of the objectants that the direction to pay off all mortgages and incumbrances on the real estate of Caroline A. Brundage, existing thereon at the time of her decease, as provided in clause 10 of her will, is not such an express direction as to bring it within the exception set forth above. On the contrary, they urge that the direction applies only to the real estate which is subject to the future action and control of the executors and trustees under the will. In this connection it is urged on behalf of objectants that in the cases cited as authority for the rule above stated the testator specifically directed, in each instance, that the particular mortgage should be paid out of the general estate, while in the will now under review in this proceeding the direction to pay off the mortgages is contained in the clause naming the executors and trustees, and refers only to the property which the trustees took under the will.

I am of the opinion that although the executors and trustees may have no duty relating to the properties devised by clause 8 of the will, the mortgages thereon are by the will directed to be paid out of the general estate. It is the intention of the testatrix that is the governing consideration, and in my judgment the leading and controlling intention of Caroline A. Brundage was that all mortgages, being liens upon her property at the time of her death, should be satisfied and paid out of her general estate by her executors.

The objectants argue further that the initial clauses of paragraph 10 of the will relating to repairs, taxes and assessments can have reference only to the property over which the executors had future control, and that consequently testatrix must have intended her direction to pay off all mortgages on her property to

apply only to so much of the property as was so held by the executors. However correct this interpretation of the initial clauses of paragraph 10 may be, it is not so inconsistent with my interpretation of the succeeding clause of that paragraph, which contains what I consider to be a specific direction to pay off all mortgages existing upon her property at the time of her death, as to limit her express intention in any manner. The testatrix does not specify severally the mortgages to be paid off. Neither does she except any. Her language naturally includes all mortgages. It is only in the final clause of paragraph 10, wherein the testatrix authorizes and empowers her executors and trustees to sell, mortgage or lease " any or all of my property not herein specifically *bequeathed* " that the property devised under clause 8 is specifically excepted from the provisions of paragraph 10. The intention of the testatrix, in my opinion, is clear, however inartificially it may be expressed. In my judgment she intended all the mortgages on all her property to be paid off. Even though, as argued, one interpretation may be as probable as the other, which I think not sound, the construction given the will by the surrogate is the superior construction, inasmuch as it favors the kin of the testatrix. William Henry Young is the nearest male relative of the testatrix, and the interpretation accorded comes within that principle of construction which favors an interpretation making for the benefit of a near relative as against strangers to the blood. *Wood* v. *Mitcham,* 92 N. Y. 375, 379; *Quinn* v. *Hardenbrook,* 54 id. 83; *Scott* v. *Guernsey,* 48 id. 106; *Kelso* v. *Lorillard,* 85 id. 177, 182.

The second question submitted to me concerns the payment of the general legacies. As noted above, the assets of the estate have proved insufficient to pay the legacies in full and to set up the trusts created under

Surrogate's Court, New York County, November, 1917. [Vol. 101.

the will of Caroline A. Brundage. By the ninth clause of her will testatrix provided as follows: *" Ninth.* The income of all the rest, residue and remainder of my property, both real and personal, wherever situated and not herein otherwise specifically disposed of, I give, devise and bequeath to my nephew, William Henry Young, during his life; and on his death, the trust hereby created shall cease and said property shall be divided among his surviving children and the issue of any deceased child, *per stirpes."*

By the seventh clause of her will testatrix provided that upon the death of the various persons to whom she had bequeathed the income of certain sums therein mentioned during their respective lives the principal sums so held in trust for said respective beneficiaries should, upon their respective deaths, be returned to and become part of her residuary estate, or in certain instances that they should go to the issue of the beneficiary, if any. The seventh clause further provided that if such beneficiary should leave no issue the same should become part of the residuary estate of testatrix.

By subdivision K of the seventh clause of her will testatrix established a trust fund of $20,000, the income of which she directed to be paid to Mary E. Taylor during her life, with remainder over. Mary E. Taylor died on the 23d day of February, 1914, and the principal of the fund held for her benefit during her life has therefore become distributable. Question has arisen as to whether this sum should be disposed of as directed by the ninth clause of this will, or whether it should be applied toward the payment of the other legacies bequeathed thereunder. As to this question my conclusion is that the remainders of the trust funds, limited by the seventh clause of testatrix's will, must be applied first to the payment of the general

legacies given under the will. *Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339.

The third question submitted to me has to do with the legacy bequeathed to the Woodlawn Cemetery in the fourth clause of testatrix's will, which reads as follows: " *Fourth.* I give and bequeath to the corporation known as the Woodlawn Cemetery, in the city of New York, the sum of one thousand dollars ($1,000); in trust, nevertheless, to apply the income from said sum for the purpose of caring for and keeping in good order my burial plot in said cemetery, in which are buried my deceased husband, father-in-law and mother-in-law." In respect to this particular legacy the decree should provide for its payment in full. Such bequests are deemed to be a part of the funeral expenses and do not abate. *Matter of Maverick*, 135 App. Div. 44; affd., 198 N. Y. 618.

The fourth question has to do with the trust created under the third clause of the will of the testatrix, which provides as follows: " *Third.* I give and bequeath to my executors and trustees hereinafter named the sum of five thousand dollars ($5,000), to be used by them in the erection of a vault upon the burial plot owned by me in Woodlawn Cemetery, in the city of New York, and I direct them to move the monument now upon the said plot to the rear of the said plot, and to remove the bodies of my deceased husband, father-in-law and mother-in-law, now buried in said plot, to the said vault, when erected, and I further direct that the headstones over the present graves of my deceased father-in-law and mother-in-law shall remain upon the said plot after the removal of their said bodies to the said vault, and that the steps now upon the said plot be retained and used in front of the said vault."

Submitted with the proposed decree is an affidavit by Rev. Nathan A. Seagle, one of the executors and

Surrogate's Court, New York County, November, 1917. [Vol. 101.

trustees, which was served upon all the parties who appeared herein. This affidavit is part of the papers filed in this proceeding, and, as it is uncontradicted, the contents thereof are to be treated as true. Code Civ. Pro. § 2546. The affidavit sets forth in substance that by the third clause of her will the testatrix bequeathed to her executors and trustees the sum of $5,000 to be used by them in the erection of a vault upon the burial plot owned by her in Woodlawn Cemetery. Inquiries made by the affiant of the Woodlawn Cemetery Corporation establish the fact that, as the plot owned by the testatrix measured only sixteen feet two inches in width, the rules of the cemetery prohibit the erection of a mausoleum. The affiant also ascertained that no property on either side of the plot in question could be acquired, and that it will be therefore necessary to construct an underground vault in order to carry out as far as possible the wishes of the testatrix expressed in the third clause of her will. The affiant consulted the cemetery authorities concerning the cost of a suitable underground vault, and the expense necessarily to be incurred in complying with the other provisions of the third clause of her will, and he states that a very ample allowance for the performance and completion of the work necessary to the fullest compliance possible with the provisions of the will will not exceed the sum of $1,500. I am therefore of the opinion that the purpose for which the trust was created in the third clause of the will of testatrix has partly failed. The trust created by the third clause of testatrix's will is valid as a charitable use. Pers. Prop. Law, § 13-a. This was not a charitable use at common law. *Lloyd* v. *Lloyd*, 2 Sim. N. S. 255; *Hoare* v. *Osborne*, L. R. 1 Eq. 585; 33 London Law Quar. Review, p. 358. Under the *cy-pres* doctrine, formerly inapplicable in this state (*Beekman* v. *Bonson*, 23 N. Y. 298), but now by statute made

applicable to charitable trusts  in this state (Laws of 1893, chap. 701, amd. by Laws of 1901, chap. 291), the executors may set up the trust in the sum of $1,500 and they may carry out as near as possible the trust purposes set forth in the third clause of the will of testatrix.  The fund of $5,000, given in trust under the third clause of the will, has not abated so as to bring it below the sum of $1,500 directed to be applied as above. The trustee may therefore set up the trust to the extent of $1,500, without prejudice to the other legatees.  The balance of the sum set apart by the third clause of the will becomes part of the general assets of the estate, and it should be applied as directed in the determination of the second question discussed herein.

The fourth question has to do with the legacy payable to the Home for Old Men and Aged Couples out of the remainder of the fund held in trust for Mary E. Taylor during her life, who survived the testatrix and is now deceased.

The sixth paragraph of testatrix's will is as follows: " *Sixth.* I make the following bequests of cash, to wit: * * *  (h)  To the Home for Old Men and Aged Couples, Amsterdam avenue and One Hundred and Twelfth street, borough of Manhattan, city and state of New York, the sum of five thousand dollars ($5,000) on the death of Mary E. Taylor, *as hereinafter mentioned.*"

The seventh clause of the will of testatrix reads as follows: " *Seventh.* I give and bequeath the following named sums of money in trust to the persons named, with remainder as stated respectively: * * * (k) To my husband's niece, Mary E. Taylor, daughter of Theodore B. Taylor, the income on the sum of twenty thousand dollars ($20,000) during her life, and on her death the sum of five thousand dollars ($5,000) *as hereinbefore mentioned* shall go to the Home for Old Men

**540**     MATTER OF BRUNDAGE.

Surrogate's Court, New York County, November, 1917.    [Vol. 101.

and Aged Couples, Amsterdam avenue and One Hundred and Twelfth street, borough of Manhattan, city of New York, and the sum of fifteen thousand dollars ($15,000) shall become part of my residuary estate.'' The fund given for the benefit of Mary E. Taylor was reduced by abatement to the sum of $8,920.32. The accountants have adopted the theory in their proposed decree that the Home for Old Men and Aged Couples is entitled to one-quarter of the principal fund, plus their proportionate share of the remaining three-quarters of said fund, which, under the decree proposed, is to be distributed ratably among the other legatees. I am of the opinion that the proposed method of distribution is in this instance erroneous. The bequest to the Home for Old Men and Aged Couples is a demonstrative legacy. A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security. *Crawford* v. *McCarthy,* 159 N. Y. 519.

The remaining question has to do with the charging of interest in the decree on the sum of $800 interest paid to Mary E. Maynard since the death of testatrix in 1909 on the sum of $5,000 held by the trustees for her benefit under the will. The proposed decree charges the sum of $46.80 interest against the balance of accrued income to May 1, 1917, on the assumption that as the cash income in the hands of the executors and trustees has earned interest at two per centum per annum the accountants would have had more in their hands payable at present to all of the beneficiaries had the income payable to Mary E. Maynard not been advanced. Consequently they propose that the amount payable to her under this decree should be charged with interest at the same rate as that earned by the amounts retained by them.

With this proposal I am not in accord. Subdivision

(d) of clause seventh of the will reads as follows: " *Seventh.* * * * (d) To Mary Ewer Maynard, wife of George Maynard, of the city of New York, the income on the sum of five thousand dollars ($5,000) during her life; and on her death, said sum to become part of my residuary estate."

The beneficiary was obviously entitled to the payments made to her during the past eight years on account of the income to which she was entitled under the provision of the will set forth above. The payments to her were not advances and do not carry interest.

Decreed accordingly.